UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRAIG RUTZ and THOMAS LUDVIK )
)
Plaintiffs, )
) Case No. 03 C 1907
v. )
) Judge Joan B. Gottschall
VILLAGE OF RIVER FOREST, )
A Municipal Corporation, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs and Relators Craig Rutz ("Rutz") and Thomas Ludvik ("Ludvik") have brought suit against defendant Village of River Forest ("River Forest") alleging, *inter alia*, violations of the False Claim Act (the "Act" or "FCA") under 31 U.S.C. § 3729(a)(7) and unlawful retaliation as proscribed by the same Act under 31 U.S.C. § 3730(h). River Forest has moved for summary judgment on these two claims. For the reasons set forth below, summary judgment in favor of defendant River Forest is granted with respect to both the FCA claim under 31 U.S.C. § 3729 (a)(7) and the retaliation claim under 31 U.S.C. § 3730(h).

### I. BACKGROUND

Briefly, plaintiffs' complaint against River Forest has its origins in a grant provided to the River Forest Police Department ("Police Department") by the Cook County Judicial Advisory Committee ("JAC"). Rutz, a lieutenant in the Police Department, originally submitted an application on behalf of the Police Department in June of 2000 for a Balanced Approach to Drug and Gang Elimination ("BADGE") grant.

1

Funds for the grant originate in the federal Local Law Enforcement Block Grant ("LLEBG") Program and are under the control and supervision of the JAC, a county agency, which reviews and approves the BADGE grant applications. According to the terms of the BADGE grant, the funds supplied must be used for the purposes specified in the grant award, and any funds not so used must be returned.

One of the programs enumerated in the budget of the BADGE grant application was a tactical unit targeting crime prevention and drug, alcohol, and gang suppression. The personnel of the unit were to consist of Police Department officers paid on an overtime basis from the grant's budget; the budget for the proposed unit constituted approximately half of the overall grant budget. The grant was approved in due course by the JAC, and the grant funds were made available to the Police Department.

In June of 2001, the JAC requested an evaluation (the "report") by the Police Department's Chief of Police of the programs funded by the BADGE grant. Prior to the submission of the report to the JAC, Rutz, the project manager of the BADGE program, informed the Chief of Police that the report contained misleading statistics which implied that the tactical unit program had been implemented. In point of fact, Rutz claims, the unit had not been formed. Nevertheless, the study containing the misrepresentations was submitted to the JAC. Rutz subsequently filed this suit claiming, *inter alia*, multiple counts of age and gender discrimination, and violation of, and retaliation under, the FCA. It is these latter two claims that the court now addresses.

Defendant has moved for summary judgment of plaintiffs' claims under the FCA; specifically, violation of the FCA under 31 U.S.C. § 3729(a)(7) and unlawful retaliation under 31 U.S.C. § 3730(h). Under Rule 56(c) of the Federal Rules of Civil Procedure, a

movant for summary judgment bears the burden of establishing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial, then Rule 56(c) mandates a grant of summary judgment. *Celotex*, 477 U.S. at 322-23. When considering a motion for summary judgment, the court will consider the evidentiary record in the light most favorable to the nonmoving party and will draw all reasonable inferences in its favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002).

## II. ANALYSIS

### A. Violation of the False Claims Act, 31 U.S.C. § 3729(a)(7)

For plaintiffs to succeed on a claim under the FCA, they must demonstrate (1) that the defendant made a statement or record in order to obtain money from the government; (2) that the record was false or fraudulent, and; (3) that the defendant knew the record was false or fraudulent. 31 U.S.C. § 3729(a)(7); *See also United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604; (7th Cir. 2005); *United States. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999). Defendants argue that there are no facts to indicate that the report alleging financial misrepresentations made by the Police Department was ever made directly to an officer or employee of the federal government for purposes of obtaining grant funding or payment and that therefore plaintiffs' case must fail.

3

In 1986, Congress amended the FCA definition of "claim" to permit FCA lawsuits where the alleged fraud is against a federal grantee. *See United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 737 (D.C. Cir. 1998). Under this new definition, "claim" was to be construed to be:

> [A]ny request or demand … for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31. U.S.C. §3729(c). Combining 31 U.S.C. §§ 3729(a) and 3729(c), the court in *Yesudian* found that the elements of a violation of the FCA are met when:

> [T]he defendant knowingly present[s], or cause[s] to be presented, to an officer or employee of the United States … a false or fraudulent … request …to a … grantee … if the United States Government provides any portion of the money … which is requested …, or if the Government will reimburse [the] … grantee … for any portion of the money … which is requested.

153 F.3d at 738. In keeping with its interpretation of Congressional intent, the court found that a false claim to a grantee of federal funds was "effectively presented" to the United States because the payment comes out of funds supplied by the federal government. *Id.* (quoting the Senate Judiciary Committee: "[A] false claim to the recipient of a grant from the United States or to a State under a program financed in part by the United States is a false claim to the United States." S. REP. NO. 99-345, at 10 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5275, 5275).[1]

---

[1] The *Yesudian* court speculated that such a claim might not apply to all grantees. For example, a claim under the FCA might not be appropriate if the grantee's federal funds are an insubstantial portion of the total budget, if the there is little likelihood that any of defendant's money was actually derived from federal funds, or if there is little continuing contact between government and grantee after the grant is made. *Yesudian*, 153 F.3d at 738.

  The court in the present case notes further that the court in *United States ex rel. Totten v. Bombardier Corp.* rejected the notion of "effective presentation" in light of the plain language of the statute. No. Civ.A.

4

In the present case, it is undisputed that the JAC was a grantee of the federal government; the funds used for the BADGE grant were derived from the LLEBG Program, which is funded by the federal Bureau of Justice Assistance. However, the court need not address the issue of whether the federal LLEBG Program funds obtained via the Cook County JAC were "effectively presented" to the federal government, because plaintiffs fail to meet the principal requirement of a claim: that it be a "request or demand … for money or property." 31. U.S.C. § 3729(c).

According to the Seventh Circuit, the essence of the first element of an FCA action is that there must be a fraudulent statement, the purpose of which must be to coax a payment of money from the federal government. *Gross*, 415 F.3d at 604. Quoting the statutory language, the court in *Gross* found that liability attaches only when a false statement is used "to get a false or fraudulent claim paid or approved by the Government." *Id*. (quoting 31 U.S.C. § 3729(a)(2)). Plaintiffs have alleged no facts to support their contention that the report at issue, which was presented to the JAC approximately one year after the grant application was submitted, was in any way a demand or a request for money; those funds had already been disbursed by the JAC. Indeed, the *original* grant application, which could be construed as a demand or request, was in fact assembled and submitted by plaintiff Rutz. Rutz has adduced no facts to demonstrate that the Police Department, in bad faith, had no intention of forming the tactical unit *prior to* the submission of the original grant and the disbursement of the funds.

---

98-0657RWR, 2003 WL 22769033, at *2 (D. D.C. March 16, 2003). The court noted that Congress had retained the unambiguous language of the statute prior to amendment requiring presentment to an officer or employee of the United States. *Id.*

Rutz declares in his affidavit that, when discussing the report with Police Department Chief of Police Michael Holub, Holub told him that one of the purposes of the report, which contained the alleged misrepresentations, was to secure future LLEBG grant funding for the Police Department. However, Rutz alleges no facts to indicate that the misrepresentations in the report were ever used to apply for funding at a later date, or to otherwise solicit government funding. Since the alleged false statements in the report were never used directly to request or demand funding from the federal government, but only to account for how previously disbursed funds had been spent, however misleadingly, plaintiffs fail to meet the first required element of the FCA. Their claim must, consequently, fail and summary judgment be granted in favor of the defendant.

### B. Retaliation under the False Claims Act

The FCA recognizes a private cause of action for violation of 31 U.S.C. § 3729 when brought in a *qui tam* action by plaintiffs, known as relators, on behalf of the United States. 31 U.S.C. § 3730(b)(1); *see also Hindo v. Univ. of Health Sci./The Chicago Med. Sch.*, 65 F.3d 608, 612-13 (7th Cir. 1995). The FCA also prohibits retaliation against plaintiffs who bring such suits (and who are often employees of the defendants against whom they bring the action) and prescribes the available remedies. 31 U.S.C. § 3730(h).[2]

---

[2] 35 U.S.C. § 3730(h) reads as follows:
> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorney's fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

Plaintiffs allege that Rutz was unlawfully demoted, harassed, and refused promotion as a result of his calling public attention to the misrepresentations in the report.

In moving for summary judgment on this claim, defendant contends that plaintiffs' claim under § 3730(h) is untimely, and therefore barred by the statute of limitations, and that plaintiffs have otherwise failed to meet their burden. Since Rutz filed his retaliation claim under 31 U.S.C. § 3730(h) in April 2007, the question arises as to whether the alleged events of retaliation occurred within the time frame encompassed by the statutory limit.

Both parties agree that the six-year statute of limitations set forth in the FCA does not govern FCA actions for retaliation brought under § 3730(h). Rather, in *Graham County Soil and Water Conservation District v. United States ex rel. Wilson*, the United States Supreme Court held that for such claims the "most closely analogous state limitations period applies." 545 U.S. 409, 422 (2005). The question thus presents itself: what is the most closely analogous state statute of limitations period?

Defendant contends that the most closely analogous state statute of limitations is the two-year limitations period for injury to the plaintiff's person, as prescribed in 735 ILCS 5/13-202.[3] Plaintiffs counter with the argument that the five-year limitations period for retaliatory discharge prescribed by 735 ILCS 5/13-205 is the more closely analogous Illinois statutory period. Plaintiffs cite in support *Berghoff v. R.J. Frisby Manufacturing Co.* and *Henon v. Lever Brothers Co.*, both of which hold that actions for retaliatory

---

[3] 735 ILCS 5/13-202 reads in part:
> Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, except damages resulting from first degree murder or the commission of a Class X felony and the perpetrator thereof is convicted of such crime, shall be commenced within 2 years next after the cause of action accrued.

7

discharge fall within the "all civil actions not otherwise provided for" provision of 735 ILCS 5/13-205.[4] 720 F. Supp. 649, 652 (N.D. Ill. 1989); 449 N.E.2d 196, 197 (Ill. App. Ct. 1983). Rutz was not actually discharged in retaliation for his actions, which is an essential element of an action for retaliatory discharge, *see Stebbings v, Univ. of Chicago*, 726 N.E.2d 1136, 1140 (Ill. Ct. App. 2000), but it is conceivable that an adverse job action in retaliation against Rutz for filing suit against River Forest could fall under this "catch-all" provision of 735 ILCS 5/13-205.

The court, however, disagrees with both parties and finds that the closest analogous Illinois statute to this case is the Local Government and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"). *See* 745 ILCS 10/1-101 *et seq*. The statute of limitations provision of that Act reads in part:

> No civil action other than an action described in subsection (b) [which imposes a two-year limitation period for actions for damages for injury or death] may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one-year from the date that the injury was received or the cause of action accrued.

745 ILCS 8/1-101(a).

River Forest is indisputably a "local entity" within the contemplation of the Tort Immunity Act, which is defined, *inter alia*, as:

> [A] county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, trustees of schools of townships, treasurers of schools of townships, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum

---

[4] 735 ILCS 5/13-205 reads in part:
> [A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

district, emergency telephone system board, and all other local
governmental bodies.

745 ILCS 10/1-206.

Even if the court were to accept plaintiffs' theory that retaliatory discharge is the closest analogy, plaintiffs would nevertheless be limited to a one-year statute of limitations. Illinois courts have held that such a tort claim against a local entity, as defined by the Tort Immunity Act, falls within the one-year time bar of the Tort Immunity Act instead of the five-year statutory limit provided when the defendant is a private corporation.[5] *Halleck v. County of Cook*, 637 N.E.2d 1110, 1113 (Ill. App. Ct. 1994). Plaintiffs' invocation of *Berghoff* and *Henon* is thus unavailing as the defendants in those cases were private corporations, rather than local government entities, and hence were not under the aegis of the Tort Immunity Act. *Halleck*, 637 N.E.2d at 1113.

Plaintiffs might appropriate defendant's contention that the retaliatory action constituted a personal injury. "Personal injury" is defined in part under the Tort Immunity Act as:

> [D]eath, injury to a person, or damage to or loss of property. It includes any other injury that a person may suffer to his person, reputation, character or estate which does not result from circumstances in which a privilege is otherwise conferred by law and which is of such a nature that it would be actionable if inflicted by a private person.

745 ILCS 10/1-204. It is conceivable that the retaliatory acts alleged by plaintiff, which include a transfer in duties to patrol officer and denial of promotion, could fall under

---

[5] The court notes in passing that, under certain circumstances, the Tort Immunity Act may be preempted. For example civil rights actions brought under 42 U.S.C. §§ 1981, 1982, 1983, and 1985 are governed by the two-year statute of limitations for personal injury, preempting the one-year limitations period under the Tort Immunity Act. *See Wolf v. City of Chicago Heights*, 828 F. Supp. 520, 522 (N.D. Ill. 1993) (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987)). However, the United States Supreme Court has not specified what the closest analogous statute is for retaliation claims made under the False Claim Act. *Graham County*, 545 U.S. at 422. Nevertheless, application of the one-year bar for retaliatory discharge under the Tort Immunity Act or the two-year bar under the personal injury section of the Act results in the same outcome in the instant case.

injury to reputation, character, or estate. At most, however, this would provide only a two-year statutory limitation period under 745 ILCS 8/1-101(b).

Plaintiffs were granted leave to file their amended complaint to allege retaliation under the FCA, on April 5, 2007. Since most of the events that Rutz claims were made in retaliation occurred prior to April 2005, *viz.*, the assignment to patrol duties and his failure to be selected for promotion in 2002 and 2004, those claims are barred by either the one-year limitation on claims for retaliatory discharge or the two-year personal injury statutory limitation of the Tort Immunity Act.

A motion for summary judgment should be granted when the undisputed facts show that, under the applicable statute of limitations, plaintiffs' claim is barred. *Deer v. New York Cent. R. Co.*, 202 F.2d 625, 628 (7th Cir. 1953). Since plaintiff's claim of retaliation in violation of the FCA is time barred with respect to his alleged demotions and failures to be promoted, all of which occurred prior to April 2005, there remains no genuine issue of material fact in dispute and defendant's motion for summary judgment on this portion of the claim is therefore granted.

There remains plaintiffs' claim that Rutz continued to receive poor performance appraisals and demeaning assignments from April 2005 until the time their amended complaint was filed in April 2007. These alleged retaliatory acts were within the statutory period: if the statute for personal injury is applied under 745 ILCS 8/1-101(b) of the Tort Immunity Act, any alleged retaliation between April 2005 and April 2007 would be within the statutory limits. If the limitations period under 745 ILCS 8/1-101(a) (the limitation for other actions against local entities) is applied, any retaliatory acts between April of 2006 and April of 2007 would be within the limit. To survive summary

judgment on those claims, plaintiffs must provide evidence that (1) their actions were taken in furtherance of an FCA enforcement action and were therefore protected by the statute; (2) the defendant had knowledge that the plaintiff was engaged in the protected conduct; and (3) the retaliatory acts were motivated, at least in part, by the protected conduct. *United States ex rel. Lang v. Northwestern Univ.*, No. 04 C 3290, 2006 WL 408192, at *3 (N.D. Ill. Feb. 13, 2006).

Plaintiffs must first show that Rutz's actions, which were the cause of the alleged retaliation, were protected under the statute. An employee may not be the object of retaliatory actions "because of lawful acts done … in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed." 31 U.S.C. § 3730(h). Rutz need not have had actual knowledge of the FCA for his actions to constitute protected activity, but he must show that an FCA action was a "distinct possibility" at the time of the investigation in order to invoke the statutory protection. *Fanslow v. Chicago Mfg. Ctr.*, 384 F.3d 469, 479 (7th Cir. 2004) (quoting *Neal v. Honeywell, Inc.*, 33 F.3d 860, 864 (7th Cir. 1994)). The relevant test contains both subjective and objective elements: Rutz must show that (1) he had a reasonable belief that the River Forest was defrauding the government with false claims; and (2) a reasonable employee in the same or similar circumstances would also have had the same belief. *Fanslow*, 384 F.3d at 479-80.

The question thus turns on whether Rutz's actions in response to the defendant's alleged misrepresentations in the report were directly related to a government payment, and whether Rutz's whistleblowing could have led to an action under the False Claims Act. *Cf. Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 846 (9th Cir.

11

2001). For the reasons set forth *supra*, the report in which the alleged misrepresentations were made was neither a demand nor a request for money and therefore cannot constitute a "claim" as defined by the statute. 31. U.S.C. § 3729(c). Neither Rutz, nor a similarly-situated individual, could have reasonably believed that the report, which contained an evaluation of the Police Department's programs, was, by itself, a request or demand for federal money. Absent the making of a false claim in the form of a request or a demand for payment by the Police Department, there can be no action under the FCA. *Id.* Rutz cannot therefore demonstrate that there was a "distinct possibility" of an FCA suit against the defendant and cannot reclaim any money or property spent. Since it is not possible that the alleged misrepresentations in the report could have led to an action under the FCA, Rutz's activities were not protected by 31 U.S.C. § 3730(h), and therefore his claim of retaliatory acts that fall within the statutory limitations period fails. Since Rutz has failed to make a showing sufficient to establish the existence of an element essential to plaintiffs' case on which plaintiff would bear the burden of proof at trial, Rule 56(c) mandates a grant of summary judgment. *Celotex*, 477 U.S. at 322-23.

### III. CONCLUSION

For the reasons stated above, summary judgment in favor of defendant River Forest is granted with respect to both the False Claims Act under 31 U.S.C. § 3729 (a)(7) and the retaliation claim under 31 U.S.C. § 3730(h).

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: October 25, 2007